(58 App. Div. 18.)

### CITY TRUST, SAFE-DEPOSIT & SURETY CO. OF PHILADELPHIA v. FIDELITY & CASUALTY CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department. February 8, 1901.)

1. INDEMNITY—CULPABLE NEGLIGENCE—INSTRUCTIONS—CURE OF ERROR.

Defendant contracted to reimburse plaintiff for liability to indemnify a railway company against loss from the culpable negligence of its "general collector." While the collector's bank wagon was standing in front of a bank, with the collector sitting on the seat, a bag of money was taken therefrom without his knowledge. Plaintiff paid the amount to the railway company, and sued defendant to recover its proportion under the contract. The court charged that if the collector performed his duty "imprudently, or with a lack of watchfulness which he should have exercised, and permitted his attention to be diverted for one instant upon any pretext, he was guilty of negligence," and, on exceptions being taken to this charge, pointed out that he had said, "with a lack of watchfulness, * * * permitted his attention to be diverted." He also charged that, to enable plaintiff to recover, the jury must find that the loss of the money was by or through the culpable negligence of the collector, and correctly defined "culpable negligence." Held, that the charge that, if the collector "permitted his attention to be diverted for one instant upon any pretext, he was guilty of negligence," was erroneous, but was cured by the connection in which the words were used, and by the subsequent charge that recovery could be had only for culpable negligence, and the correct charge as to what constituted such negligence.

2. SAME—REFUSAL OF REQUEST—OTHER INSTRUCTIONS.

Where, in an action on a contract of indemnity against loss by or through the culpable negligence of an employé, a loss has occurred, which it is claimed resulted from such negligence, it is not error for the trial court to refuse defendant's requests to charge respecting culpable negligence after the court, in his general charge, has correctly and fully instructed the jury on that subject.

3. SAME—PAYMENT—TIME—WAIVER.

Defendant contracted to indemnify plaintiff for a portion of any sum it might become liable to pay under its bond to indemnify an employer against any loss by reason of the culpable negligence of an employé;

payment under the bond to be made at the expiration of three months after satisfactory proof of loss was furnished. A loss having occurred, for which plaintiff was liable under the bond, it paid the employer before the three months expired. *Held*, that the condition that payment should be made at the expiration of three months was an option given to plaintiff, which it might waive without affecting its right to recover from defendant.

4. SAME—JURY—VERDICT—EVIDENCE.

Defendant contracted to, reimburse the plaintiff a portion of any sum it might become liable to pay under an indemnity bond to a railway company against any loss by culpable negligence of its general collector. While the collector's wagon, which could only be entered by climbing over the seat, was standing in front of a bank, and while the collector was sitting on the seat, a sack of money was taken from inside the wagon without his knowledge or his seeing any suspicious character; and there was no evidence as to who took the money or how it was taken, and no evidence of his negligence, other than his own statement that the money was so taken without his knowledge. *Held*, that the question of the collector's culpable negligence was properly submitted to the jury, and that a verdict in plaintiff's favor on that issue was justified by the evidence, as culpable negligence might properly be inferred from the circumstances under which the loss occurred.

Appeal from trial term, New York county.

Action by the City Trust, Safe-Deposit & Surety Company of Philadelphia against the Fidelity & Casualty Company of New York. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

The action was brought on a contract whereby the defendant agreed to reimburse the plaintiff "to the extent of twenty thousand dollars ($20,000), or $50/111$ths of any such sum or sums as the reinsured may become liable to pay and pay under or by virtue of" its bond of insurance issued to the Metropolitan Street-Railway Company, guarantying and indemnifying against any loss by reason of "the personal dishonesty or culpable negligence" of its employé, George S. Wickham. The reinsurance agreement also covered expenses incurred in investigating, settling, and resisting any claim made, and provided that, if a claim were made, "the reinsurer shall at once be advised and consulted before the admission or payment by the reinsured." Reference is made to the insurance bond given by the plaintiff, which, among other things, provides that the surety company "shall not be liable * * * for any act or thing done or left undone by any employé in obedience to or in pursuance of any instruction or authorization received by him from the employer, * * * nor for any mere error of judgment, nor any injudicious exercise of discretion * * * wherein he shall have been vested with discretion; * * * and it is expressly understood and agreed that the company shall in no way be held liable hereunder to make good any loss by robbery that the employer may sustain, unless the same be occasioned by or with the connivance or culpable negligence of some one or more of said employés." The surety company agreed to reimburse the employer for loss sustained under conditions stated "at the expiration of three months next after due and satisfactory proof of the loss mentioned shall have been furnished." These contracts being in force, demand was made upon the plaintiff by the Metropolitan Company on January 27, 1897, for payment of a loss alleged to have been sustained on January 18, 1897, through the culpable negligence of George S. Wickham, from whose possession a canvas bag containing $5,817.-15 was taken while he was in the discharge of his duties of conveying the money of the company from the Broadway station to the Pacific Bank. Mr. H. Parsons, plaintiff's superintendent of claims, at once gave notice to the defendant of the demand made, and consulted and acted with defendant's representatives in investigating the loss, one of whom made a sketch of the wagon used by Mr. Wickham when the money disappeared. On March 13,

1897, the plaintiff wrote defendant that, "after an exhaustive and complete investigation of all the known circumstances connected with the loss," it was entirely satisfied that the said loss was occasioned by or with the culpable negligence of George S. Wickham, and that it is liable for and must pay for such loss. Demand was made that the defendant bear its proportionate share. On March 17th the plaintiff paid the claim in full, and, the defendant refusing to pay any part thereof, this action was brought against it, and the defense relied upon is that the facts do not show that the loss was occasioned by the culpable negligence of George S. Wickham. It was admitted on the trial that, in addition to the $5,817.15 paid by the plaintiff to the Metropolitan Company, the additional expense incurred by the plaintiff in investigating the claim, etc., was $820.44; so there is no dispute as to the amount due from the defendant, if any sum is due.

The sketch put in evidence, and the testimony given, show that the wagon used by Wickham was like the covered delivery wagons used by dry-goods stores,—provided with windows at the back and on the sides, but having no entrance except over the seat in front. The bed was built very high, resting on springs, which brought the foot rest directly over the front wheels; and as there was no step on the side, nor any shaft,—two horses being used with the wagon,—it was necessary to step upon and over the wheel to get in. The seat was 2 feet from the dashboard, and was but 3 feet 4 inches long and 18 inches wide, and was provided with a hinged back, which was let down to reach into the rear of the wagon. The bed comprised a "money box" having lids opening upward against the sides of the wagon, and was provided with a lock, for which Mr. Wickham held the key. The evidence shows that Mr. Wickham was officially known as the "general collector," and made the rounds of the various stations every day, taking the money in bags labeled for deposit in various banks. Accompanying him was Mr. Battey, the driver. Both men had been employed for several years in this work without mishap. The story of what occurred is to be gathered entirely from their testimony. Mr. Wickham says that he had received six bags of coin from the station at Broadway and Fiftieth street, each weighing about 50 or 60 pounds, and a canvas bag containing $5,817.15 in bills, with the exception of the cents. This bag, it is admitted, was 22 inches long, 12 inches in height, and 8 inches wide at the bottom. All the bags, Mr. Wickham says, were put in the money box, back of the seat, and locked up, and not opened until the Pacific Bank, at 470 Broadway, was reached, at about 12 o'clock. The wagon was driven up beside the curb, and stopped so the front of it was opposite a short flight of stairs which led to the bank. There were then a number of people in the street. Mr. Battey went up the stairs through a corridor into the bank, and brought a small truck to the head of the stairs, where it could be seen from the wagon, and then came down to get the money. Mr. Wickham unlocked and opened the money box (and may, he says, have got into it), and threw the bags of coin to the front of the wagon, down by the dashboard. He then locked the money box and placed the canvas bag containing the bills "behind him," on the lid of the money box, and handed out to Mr. Battey two bags of coin. Mr. Battey carried the bags up the stairs to the truck, and came back for two more. These were given him, Mr. Wickham having meanwhile seen that the canvas bill bag was safe. After Mr. Battey had gone up with the second set of bags, a man approached the wagon and said something to Mr. Wickham, which he says he could not understand. Mr. Battey saw this man while coming downstairs, and says that his lips moved and he gesticulated, and then moved along, and at that time, if any one had attempted to enter the wagon from the other side, he would certainly have seen him. Mr. Wickham states that he looked back again for the bag, and it was there, and he then handed Mr. Battey the two remaining bags of coin, and Mr. Battey went up the stairs with them. Turning then for the canvas bill bag, which he intended to take himself into the bank after Mr. Battey had delivered the coin and returned, Mr. Wickham discovered that the bag of bills had disappeared. He saw no one, and had no knowledge whatever of its being taken. Mr. Battey says he heard Mr. Wickham make an outcry as though something was wrong, and he ran down the steps and learned that the bag of bills was gone. The bags of coin were then carried in and de-

posited, and the two men, though there were policemen near at hand, said nothing to them, but went to the office of the treasurer of the railroad company and reported the loss. Both Mr. Wickham and Mr. Battey say they saw no suspicious person, other than the man who spoke to Mr. Wickham, and had no intimation that a theft was committed. Inquiry in the neighborhood also failed to elicit any clue as to the cause of the disappearance of the money.

The court submitted to the jury the question whether the money was lost "through the culpable negligence" of Mr. Wickham, and in its charge said that if he performed that duty "imprudently, or with a lack of watchfulness which he should have exercised, and permitted his attention to be diverted for one instant upon any pretext, he was guilty of negligence." To the latter part of this charge, exception was taken, and the trial judge pointed out that he had said, "with a lack of watchfulness, * * * permitted his attention to be diverted." The court also charged that, "in order to enable the plaintiff to recover in this case, the jury must find from the evidence that the loss of the bag of money in question was by or through the culpable negligence of George S. Wickham," and defined "culpable negligence" as "an extreme degree of negligence, * * * a stronger and greater than is meant by the ordinary term 'negligent'; and, in case the jury find that George S. Wickham was not guilty of such a degree of negligence, the verdict must be for the defendant." Further, the court charged that "if the jury find that George S. Wickham performed the duties with which he was charged at the time when this loss occurred, in pursuance of his judgment, and that such loss occurred solely by reason of the judicious exercise of discretion on his part, * * * wherein he was clothed with discretion either by instructions or by the rules and requirements of the company," then the verdict must be for the defendant. The court refused to charge again as to culpable negligence, or the defendant's liability in case of the exercise of discretion; and exception was taken to the refusal to charge as requested by defendant in these matters. The jury returned a verdict in favor of the plaintiff, and from the judgment so entered, and from order denying a motion for a new trial, the defendant appeals.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, McLAUGHLIN, and O'BRIEN, JJ.

Charles C. Nadal, for appellant.

Frederick J. Swift, for respondent.

O'BRIEN, J. The charge of the court that, if Mr. Wickham "permitted his attention to be diverted for one instant upon any pretext, he was guilty of negligence," was erroneous, and, if not subsequently corrected, would be ground for reversal. An examination of the whole charge, however, shows that the court connected these words with what preceded, "with a lack of watchfulness which he should have exercised"; and immediately after the court stated that only for culpable negligence on his part could there be a recovery, defining correctly the term "culpable negligence." Any wrong impression was therefore removed. Nor was it error for the court to refuse thereafter the requests to charge respecting "culpable negligence" and the exercise of judgment and discretion, for these matters had been exactly and carefully covered by what the court had already charged.

It is suggested that the plaintiff did not carry out its agreement to pay "at the expiration of three months," but this clearly was an option given the plaintiff for protection merely; and, upon being fully satisfied that the loss must be paid, it was at liberty to disregard the time limitation. Nor is there any force in the contention that the

amount was paid without notice to the defendant. Notice of the loss was promptly given as required by the contract, and notice was given that payment had been made. The real question, therefore, was whether the facts show that the payment was justified under the policy, or, in other words, whether it appeared that Mr. Wickham was guilty of culpable negligence which occasioned the loss of the money. It is argued that there is no specific evidence of such negligence or any negligence; that, taking his story as true,—and there is no evidence to the contrary,—there was nothing shown that he did or left undone which was an act of negligence; and, moreover, that the testimony proves that everything that he did was in accordance with the custom and rules of the company as to such work. It is not claimed, however, that there was any defect in the manner in which the work was done, so far as the method of doing it is concerned; and the case must turn, therefore, on whether, from the version given, the inference could be drawn that Mr. Wickham was guilty of culpable negligence. It was unnecessary to prove that Mr. Wickham, who occupied such a respectable position of caring for the money of the company, deliberately left the wagon or was directly implicated in the theft. All that plaintiff was required to prove was that he was culpably negligent. Culpable negligence, however, may be inferred from the circumstances under which, according to Mr. Wickham's version and the undisputed facts, the loss occurred. He says he put the canvas bag behind him, and that he occupied the seat, and from there handed out the coin bags to Mr. Battey. At such time, he says, the bag was taken. As the wagon bed was above the front wheels, and there was no step, and the seat was but 3 feet and 4 inches, and it was 18 inches wide, and had a hinged back, behind which the bag was resting, it will be seen that any one, to have taken it, must have climbed upon the wheel and into the wagon,—which rested on springs,—and reached by Mr. Wickham, through the narrow space he did not occupy, over the seat, and back to where the large and heavy bag had been placed. All this the thief must have done, and escaped with the bag, without attracting Mr. Wickham's attention; for he says he never knew of the loss until the last minute, though he saw the bag but a short interval before. It is inconceivable that the bag could have thus been taken without the culpable negligence or dishonesty of Wickham. No direct charge is made that he was dishonest, but the only fair and reasonable inference is that he was culpably negligent. The fact of the disappearance of the bag under the circumstances described raises a presumption of culpable negligence. As said in Fairfax v. Railroad Co., 67 N. Y. 11, 14, where a portmanteau was lost while in defendant's charge: "When the plaintiff demanded the article, it had disappeared, and no account is given of the cause of such disappearance. This is prima facie evidence of negligence." The probability of a deliberate plan being conceived by dishonest persons to obtain large sums of money, should they be able at any time to outwit those charged with making deposits for the street-railway company at the bank, imposed upon them the duty and necessity of exercising active vigilance and care. The mere recital of how that

duty was performed on the day of the loss, in our opinion, raises a presumption that care and vigilance were not exercised. The question of whether, upon the evidence, Wickham was guilty of culpable negligence, was properly submitted to the jury; and, after an examination of the record, we think that their verdict should not be disturbed.

The judgment and order accordingly should be affirmed, with costs. All concur.